**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2464-19

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION,

     Plaintiff-Respondent,

v.

RIVER LOOKOUT
ASSOCIATES, LLC, 1275
RIVER ROAD ASSOCIATES,
LLC, and FRED DAIBES,
individually,

     Defendants-Appellants.

_____

> Argued April 26, 2021 – Decided October 19, 2021
>
> Before Judges Sabatino and DeAlmeida.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1338-19.
>
> Dennis M. Toft argued the cause for appellants (Chiesa Shahinian & Giantomasi, PC, attorneys; Dennis M. Toft, of counsel and on the briefs; James S. Arrabito, on the briefs).

Robert J. Kinney, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Robert J. Kinney, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendants River Lookout Associates, LLC (River Lookout), 1275 River Road Associates, LLC (River Road), and Fred Daibes appeal from the January 10, 2020 order of the Law Division ordering them to pay $1,740,129 in penalties to plaintiff New Jersey Department of Environmental Protection (DEP). We affirm.

I.

The following facts are derived from the record. Daibes is the sole principal of River Road, which owns property on the Hudson River waterfront in Edgewater. The property is subject to a number of environmental restrictions. Daibes is also the sole principal of River Lookout, which at the times relevant to this appeal operated a restaurant on River Road's property.

In May 2011, DEP issued an Administrative Order and Notice of Civil Administrative Penalty Assessment (AONOCAPA) against defendants alleging violations of the Waterfront Development Act, N.J.S.A. 12:5-1 to -11, the

Coastal Zone Management Rules, N.J.A.C. 7:7-1.1 to -29.10, and DEP permits. The violations arose from defendants changing the slope of the property, depositing soil and rip-rap into the river, constructing a parking lot, expanding the restaurant, building structures on state riparian lands, and other regulated acts without DEP approval. The AONOCAPA assessed civil penalties of $1,917,176.

Defendants submitted a request for a hearing with respect to the AONOCAPA. DEP transferred the matter to the Office of Administrative Law for a hearing. The parties subsequently entered into negotiations that culminated in an Administrative Consent Order (ACO) resolving the AONOCAPA.

The ACO imposed a reduced penalty on defendants of $958,588 and established a penalty installment payment schedule. Two installment payments were due within ninety days of notice that the ACO was final. In exchange, defendants agreed to complete numerous corrective actions at the property including, among other things, constructing a segment of the Hudson River Waterfront Walkway, connecting the walkway to the adjoining segments of the walkway on either side of the property, providing public access to the walkway, and removing fill they had deposited on state riparian lands.

A-2464-19

In addition, defendants were authorized to submit to DEP within one year of the ACO a supplemental environmental project (SEP) proposal to further offset the penalty. The SEP was to include the restoration or construction of an off-site section of the walkway. After DEP's approval of the supplemental SEP, defendants could satisfy up to $718,941 of the penalty by completing the supplemental SEP and applying the costs incurred dollar-for-dollar to the penalty. Defendants agreed that if they failed to submit an acceptable SEP proposal in a timely fashion, they would satisfy the penalty through the remaining installment payments.

The ACO provides that if defendants are in default on the penalty installment payments, they will be liable for the full amount of the penalty assessed in the AONOCAPA. In the event of a default, the ACO provides that the AONOCAPA will be fully enforceable pursuant to Rule 4:67 and Rule 4:70 as a final order of the DEP.

Defendants submitted an SEP proposal to DEP on July 7, 2018. DEP found the proposal to be unacceptable and gave defendants until August 14, 2018 to submit a revised SEP. Defendants did not submit a revised SEP. In addition, defendants did not commence the corrective actions they promised to undertake at the property. Defendants also failed to make one or more penalty

installment payments. DEP sent written notices to defendants and their counsel informing them that penalty installment payments were outstanding. Neither defendants nor their counsel responded to the notices. Defendants failed to make a payment due on September 23, 2018.

On February 20, 2019, DEP filed an order to show cause and verified complaint in the Law Division for a summary proceeding pursuant to N.J.S.A. 12:5-6(f), Rule 4:67-2 and Rule 4:70-1. The complaint sought $1,677,529 in penalties assessed in the AONOCAPA, as well as stipulated penalties of $67,600, for a total of $1,745,129 in penalties. The amount sought reflects a credit of $239,647 for defendants' initial payment toward the penalty.

On February 22, 2019, the trial court entered the order to show cause and required defendants to file opposition within thirty days.

Defendants filed opposition and supporting certifications on March 22, 2019. They did not dispute that the penalties were due. They argued, however, that they were unable to make the penalty installment payments because in October 2018 Daibes was indicted by a federal grand jury. According to defendants, the indictment cut off Daibes's access to the capital markets and forced the closure of the restaurant, which constituted extenuating circumstances excusing their failure to comply with the ACO. Defendants stated

that they were "open to negotiating an alternative payment schedule . . . until the payments required by the ACO are paid in full."[1]

At oral argument on the return date, defendants reiterated their position that extenuating circumstances excused their failure to make penalty installment payments. They requested additional time to answer the verified complaint and submit evidence to establish that their failure to make the payments should be excused. The trial court rejected defendants' request, finding they had an opportunity to submit evidence in response to the order to show cause.

On April 10, 2019, the court entered an order awarding judgment in favor of DEP for the unpaid $1,677,529 of the penalty assessed in the AONOCAPA, and a $62,600 stipulated penalty, for a total of $1,740,129.[2] The court deferred payment of the penalties pending a determination by DEP of defendants' ability to pay, to permit negotiation of a revised payment schedule.

Defendants moved for reconsideration of the April 4, 2019 order. They argued that the trial court denied them the right to file an answer and present

---

[1] Defendants also argued that they were unable to commence corrective actions at the property due to environmental concerns. DEP consented to defendants' commencement of those actions on or before July 1, 2019. This aspect of defendants' violation of the ACO is not before the court.

[2] The court awarded a stipulated penalty $5,000 less than requested by DEP. The disparity is not at issue.

testimony in opposition to the order to show cause. In support of the motion, defendants submitted a certification of Berek Don, a consultant of Daibes Enterprises, who was responsible for defendants' compliance with the ACO.[3] According to Don's certification, on or about November 15, 2017, "major health issues prevented [him] from working on a full-time basis." He certified that "[b]ecause of my medical problems, I failed to notify those at Daibes Enterprises of the payment obligations under the ACO, and as a result the payments were not made timely."

In response, DEP filed a certification of its employee attaching a January 5, 2018 email from defendants' counsel in which he reported that Don became suddenly ill in October 2017, but that he was "[a]t this point . . . back working on" defendants' compliance with the ACO. This email was exchanged approximately ten months prior to Daibes being indicted.

On May 24, 2019, the trial court entered an order denying defendants' motion for reconsideration. In a written decision, the court found that defendants "had a full opportunity" to respond to the order to show cause. In addition, the court found that evidence of Don's medical condition was known

---

[3] River Lookout and River Road are entities related to Daibes Enterprises, of which Daibes is Chairman.

to defendants at least as early as January 2018. Thus, the court concluded, defendants could have offered that evidence in opposition to the order to show cause. Lastly, the court concluded that "defendants offer no legal argument to suggest a basis under which this information would abate the penalties . . . ."

Despite having been granted several extensions of time to submit an ability-to-pay analysis to the DEP, defendants submitted only a partial analysis addressing River Lookout and River Road, but not Daibes, who is personally responsible for the penalties assessed in the AONOCAPA.

On December 12, 2019, DEP filed a motion for an order directing defendants to pay the outstanding penalty judgment. On January 10, 2020, the trial court entered a final order directing defendants to remit payment of $1,740,129 within fourteen days.

This appeal follows. Defendants raise the following arguments.

> POINT I
>
> CONTRARY TO N.J.S.A. 2A:58-11(c), THE TRIAL COURT IMPOSED A CIVIL PENALTY WITHOUT FIRST ALLOWING DEFENDANTS TO ANSWER THE VERIFIED COMPLAINT AND DISPUTE FACTS UNDERLYING PLAINTIFF'S ORDER TO SHOW CAUSE.

POINT II

THE TRIAL COURT ERRED IN IMPOSING CIVIL PENALTIES ON DEFENDANTS WHERE THE MATERIAL FACTS AT ISSUE, WHICH DEFENDANTS NEVER HAD AN OPPORTUNITY TO PRESENT IN ANY MEANINGFUL WAY, DEMONSTRATE THAT CIVIL PENALTIES ARE INAPPROPRIATE.

II.

Civil penalties imposed pursuant to the Waterfront Development Act may be collected in a summary proceeding pursuant to the Penalty Enforcement Law (PEL), N.J.S.A. 2A:58-10 to -12. N.J.S.A. 12:5-6(f). Summary actions to collect civil penalties may take two forms: "initial actions by agencies instituted in a court of competent jurisdiction to enforce a statute or regulation" and actions, such as that which gave rise to this appeal, "brought by an agency to enforce an order already entered by it." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:67-6 (2021).

Actions brought by an agency to enforce an existing order "shall be brought in accordance with R. 4:67 unless an applicable statute requires a plenary action in a specific matter." R. 4:67-6(b)(1). While a defendant in an initial action to impose a penalty "shall not be precluded from contesting the

amount of the penalty[,]" N.J.S.A. 2A:58-11(c), "the validity of an agency order shall not be justiciable in an enforcement proceeding." R. 4:67-6(c)(3).

Rule 4:67-2 provides that actions to enforce an existing agency order imposing a civil penalty shall be brought in a summary manner by filing a verified complaint and order to show cause.

> The court shall try the action on the return day, or on such short day as it fixes. If . . . the affidavits show palpably that there is no genuine issue as to any material fact, the court may try the action on the pleadings and affidavits, and render final judgment thereon. If any party objects to such a trial and there may be a genuine issue as to a material fact, the court shall hear the evidence as to those matters which may be genuinely in issue, and render final judgment. At the hearing or on motion at any stage of the action, the court for good cause shown may order the action to proceed as in a plenary action wherein a summons has been issued, in which case the defendant, if not already having done so, shall file an answer to the complaint within 35 days after the date of the order or within such other time as the court therein directs.
>
> [R. 4:67-5.]

"[I]f there is a contested issue of fact regarding the defendant's compliance with the order or ability to comply, the trial court must conduct an evidentiary hearing to resolve the factual dispute." Dept. of Envt'l Prot. v. Mazza and Sons, Inc., 406 N.J. Super. 13, 29 (App. Div. 2009).

10

Defendants argue that they raised genuine issues of material fact requiring an evidentiary hearing before entry of the April 4, 2019 order. We disagree. In opposition to the order to show cause, defendants did not contest that the penalties assessed against them were due. They argued only that defendants "remain[] open to negotiating an alternative payment schedule [but] cannot comply with the payment schedules in the ACO."

Defendants alleged that "extenuating circumstances" excused their failure to make the installment payments because Daibes had been indicted in October 2018 (after defendants' failure to make at least one installment payment), foreclosing his access to capital markets. Defendants did not mention the extent of Daibes's existing assets or his ability to liquidate those assets to satisfy his penalty obligations. Nor did they address in detail the assets of the corporate defendants. Notably, defendants conceded that they had rented the property to generate an income stream, the amount of which was not identified.

The trial court correctly reasoned that the difficulties defendants may have experienced in raising the funds necessary to make the installment payments as scheduled, even if true, would not excuse their liability for those payments. There is no provision of the ACO that excuses defendants' installment payment

A-2464-19

obligations based on extenuating circumstances, Daibes's indictment, or his access to capital markets.

Moreover, the trial court exercised its equitable authority to stay enforcement of the penalty judgment to give defendants the opportunity to submit evidence to the DEP establishing their inability to comply with the installment payment schedule in the ACO. This permitted defendants to negotiate a revised installment payment schedule based on their current financial circumstances. As noted above, defendants failed to submit complete information relating to Daibes's ability to make the installment payments, which resulted in DEP's termination of negotiations.

In their motion for reconsideration, defendants submitted the Don certification. As the trial court aptly found, the information in the Don certification was available to defendants when they opposed the order to show cause. The trial court's denial of defendants' motion for reconsideration was warranted on that ground alone. See R. 4:50-1(b); Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (A motion for reconsideration is not an opportunity to "expand the record and reargue a motion. [It] is designed to seek review of an order based on the evidence before

the court on the initial motion, . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record.").

We note, as well, that even if the trial court had found that Don's negligent failure to attend to his responsibilities caused defendants' default, that fact would not excuse their liability for the penalties. It would, instead, merely explain the reason for defendants' default.

We are not persuaded by defendants' arguments that the trial court erred by not giving them additional time to file an answer and the opportunity to present live testimony at an evidentiary hearing. Defendants had the chance to submit evidence in opposition to the order to show cause to establish that they were not in default on the ACO. They instead submitted proof that they were unable to meet the installment payment schedule because of Daibes's indictment, an assertion that, if true, would not excuse their liability for the penalties. The trial court did not err when it proceeded to entry of judgment without holding an evidentiary hearing on a claim that had no bearing on defendants' liability.

To the extent we have not specifically addressed any of defendants' remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                      A-2464-19